LANE v. EGGLESTON. BANK OF VERNON v. SAME. In re GUYTON & CO.

(Circuit Court of Appeals, Fifth Circuit. December 5, 1922.)

Nos. 3857, 3956.

1. Bankruptcy ⬳175—Mortgage by bankrupt, given and accepted in good faith to secure prior indebtedness, held valid.

A mortgage given by bankrupt more than six months prior to bankruptcy, to secure a prior indebtedness to a bank, which was extended for less than a year, where it was taken by the bank in good faith, and the value of the property was less than the debt, *held* valid, and not rendered fraudulent by the knowledge of the bank that bankrupt was also giving a mortgage on other property to a trustee to secure his other creditors.

2. Bankruptcy ⬳175—Validity of mortgage.

Code Ala. 1907, § 4294, providing that every mortgage or security made to secure a pre-existing debt is fraudulent and void as to creditors of the grantor, if any creditor provided for thereby is required to make any release or do any other act impairing his existing rights, *held* not to render a mortgage voidable at the instance of the trustee in bankruptcy of the mortgagor, where it secured all then existing creditors and all assented thereto, though it involved an extension of their claims.

3. Bankruptcy ⬳280—Proceedings by trustee should be controlled by court.

Under Bankruptcy Act, § 47a (Comp. St. § 9631), providing that the trustee shall collect the property of the estate "under the direction of the court," a petition by a trustee to set aside a deed of trust securing creditors should be dismissed, where opposed by the creditors, and where, if granted, the assets for distribution would be diminished rather than increased.

Appeals from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

In the matter of J. I. Guyton, bankrupt; R. H. Eggleston, trustee. From two decrees entered by the District Court, V. G. Lane as trustee for certain creditors, and the Bank of Vernon, respectively, appeal. Reversed.

Alex C. Birch, of Birmingham, Ala. (Weatherly, Birch & Hickman, of Birmingham, Ala., and J. C. Milner, of Vernon, Ala., on the brief), for appellants.

M. M. Ullman, of Birmingham, Ala. (Leader & Ullman, of Birmingham, Ala., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. These appeals are from two decrees rendered on petitions filed by the appellee as trustee in bankruptcy of J. I. Guyton—one setting aside a mortgage on land made by the bankrupt and his wife to the Bank of Vernon on January 8, 1921, that mortgage being made to secure debts, aggregating more than $19,000, then owing by the bankrupt to the mortgagee, the time of payment whereof was extended to December 1, 1921, and vesting in the trustee title to the land described in the mortgage; and the other setting aside a deed of trust on other land, made on January 8, 1921, by the bankrupt and his wife to V. G. Lane as trustee, to secure a note of the bankrupt to Lane as trustee for $45,000, payable December 1, 1921, and vesting in

the appellee, as trustee, title to the land described in the deed of trust. Guyton was adjudged a bankrupt on his voluntary petition, filed on July 14, 1921, more than six months after the execution of the attacked transfers. The attacked instruments came into existence under the following circumstances:

Shortly prior to January 8, 1921, Guyton, who was engaged in a mercantile business at Vernon, Ala., being considerably indebted and unable to pay his debts as they matured, went to Memphis, Tenn., to attend a called meeting of his creditors. At that meeting a number of his creditors, not including the Bank of Vernon, were represented. On that occasion the plan was adopted of Guyton giving a deed of trust on all his land, except his homestead, to secure a note for $45,000, the estimated amount of debts owing by him to his mercantile creditors, which note was to be payable December 1, 1921. After Guyton's return to Vernon, a lawyer representing his Memphis creditors, to whom he was largely indebted, came to Vernon to see to the execution of the deed of trust. A local lawyer advised that the Bank of Vernon should be informed of the plan. Upon that being done, the Bank of Vernon demanded that $10,000 worth of Guyton's land be mortgaged to it to secure Guyton's debts to it, for which the bank had some other security, which it retained. This was done; the above-described mortgage being made to the bank, the land covered thereby being worth about $10,000, and the remainder of Guyton's land, except his homestead, worth less than $2,000, being included in the above-described deed of trust.

When the deed of trust was made, it was understood between Guyton and some of his Memphis creditors that, if the former could not pay the debts secured by the deed of trust on December 1, 1921, the latter would allow further time, and would use their best efforts to get other mercantile creditors to do likewise. The Bank of Vernon was not a party to that understanding, which was referred to as a "gentleman's agreement." When the conveyances mentioned were executed, it was understood that Guyton was to continue his mercantile business, and was to remain in possession of his real and personal property, including the lands conveyed as security for existing debts. It was not shown that it was contemplated by any one that Guyton, without paying his debts, was to retain land conveyed as security or other property for an unreasonable period of time. There was uncontroverted evidence to the effect that those of Guyton's mercantile creditors intended to be secured by the deed of trust, who had not assented thereto when it was made, afterwards, and several months prior to the filing of the bankruptcy petition, assented thereto.

[1] We do not think that the mortgage to the Bank of Vernon was shown to be invalid or voidable. It was not made to appear that it had the effect of tying up more of the debtor's property than was reasonably necessary to secure the debts owing to the Bank. It is permissible for a creditor, though he knows that his debtor owes other debts which he is unable to pay when they fall due, to extend his debt for a reasonable time in consideration of being secured by property the value of which is not disproportionate to the amount of the debt secured,

where the creditor in so doing intends in good faith merely to get his own debt secured. The effect of the mortgage was that the mortgaged property, worth greatly less than the debts secured thereby, was absolutely and unconditionally, within a reasonable time, devoted to the payment of the secured debts. Such a transaction is not fraudulent as to other creditors. Howell v. Carden, 99 Ala. 100, 10 South. 640; Cooper v. Berney National Bank, 99 Ala. 119, 11 South. 760; Perry Insurance & Trust Co. v. Foster, 58 Ala. 502, 29 Am. Rep. 779; Huiskamp v. Moline Wagon Co., 121 U. S. 310, 319, 7 Sup. Ct. 899, 30 L. Ed. 971. The mortgage to the Bank of Vernon was not vitiated by the circumstance that the mortgagee was advised of the contemporaneous making by the debtor of a deed of trust on other land to secure the payment of a note covering the amounts of debts owing to other creditors and made payable on the same date to which the debts to the Bank were extended.

[2] As above indicated, when the above-mentioned deed of trust was executed, some of the mercantile creditors intended to be secured thereby had not assented to the arrangement which it evidenced. It is contended that that fact made the deed of trust an instrument in contravention of the following Alabama statute (section 4294 of the Code of Alabama of 1907):

"Every deed of trust, mortgage, or other security, made to secure any pre-existing debt, whether such debt is due or not, or absolute, or conditional, is fraudulent and void, as to the creditors of the grantor, when any creditor provided for thereby is required to make any release, or to do any other act impairing his existing rights, before participating in, or receiving the securities therein provided for him."

It is suggested that a nonassenting mercantile creditor had to impair his existing rights by granting an extension of his debt to December 1, 1921, before he could participate in the security provided by the deed of trust. If the quoted statute was applicable to the transaction, it ceased to be applicable upon all of the existing mercantile creditors assenting to the arrangement evidenced by the deed of trust. After all of the creditors intended to be secured by that instrument assented thereto, it seems that none of them could complain of an instrument the execution of which for his own benefit he voluntarily approved and ratified. That statute does not indicate the existence of an intention to enable the beneficiary of such a deed of trust as the one in question to avoid it, after he has voluntarily assented to it, or to make such a transfer voidable at the election of a subsequent creditor. The record does not indicate that any creditor intended to be secured by that instrument has sought to have it set aside, or approved of the action of the trustee in bankruptcy in seeking to have it annulled. All the creditors secured thereby, who appeared in the proceedings, did so for the purpose of resisting the above-mentioned petition of the trustee in bankruptcy. They joined in a motion to strike that petition. It was not disclosed that, at the time the petition in bankruptcy was filed, there was any creditor who was entitled to have the deed of trust avoided.

[3] The provision of Bankruptcy Act, § 70e (Comp. St. § 9654), that "the trustee may avoid any transfer by the bankrupt * * * which any creditor of such bankrupt might have avoided," does not

empower the trustee to avoid a transfer which, when the petition in bankruptcy was filed, was not subject to be avoided by any creditor. The record shows that many creditors disapproved of the action of the trustee in filing the petition, and does not show that any creditor assented to or approved that action. And it was not made to appear that any creditor intended to be secured by the deed of trust in question would be benefited by the granting of the relief sought by the appellee. In one respect the granting of that relief would be detrimental to the creditors, in that a result would be to free the inchoate dower interest of the bankrupt's wife in the land granted, thus diminishing the assets applicable to the payment of the bankrupt's debts. It fairly appears that the granting of the prayer of appellee's petition involving the deed of trust would benefit the bankrupt or his wife, and would not benefit his creditors as a whole, or add to the value of the assets to be distributed. In the matter of filing and prosecuting the petition the trustee was subject to "the direction of the court." Bankruptcy Act, § 47a (Comp. St. § 9631). The evidence adduced well warranted the conclusion that the action of the trustee in filing and prosecuting the petition to set aside the deed of trust in question was against the interest of the bankrupt estate.

We think that above-stated considerations called for the disapproval by the court of that action of the trustee, and that such disapproval appropriately could have been manifested by sustaining the motion of creditors that that petition be stricken.

Each of the decrees appealed from is reversed.