**MISSOURI PAC. R. CO. et al. v. THOMPSON et al.**

**PROTECTIVE COMMITTEE FOR HOLDERS OF COMMON STOCK OF MISSOURI PAC. R. CO. v. SAME.**

**ALLEGHANY CORPORATION v. SAME.**
**Nos. 12552–12554.**

Circuit Court of Appeals, Eighth Circuit.
March 5, 1943.

140

See, also, 39 F.Supp. 436.

Marion B. Pierce, of New York City and Allen L. Oliver, of Cape Girardeau, Mo., for Missouri Pacific R. Co., debtor.

Sanford H. E. Freund, of New York City, for Protective Committee for General Mortgage Four Per Cent Gold Bonds.

Everett Paul Griffin, of St. Louis, Mo., Edward F. Colladay, of Washington, D. C., and Kenneth McEwen, of New York City, for Protective Committee of First Mortgage Bondholders of International-Great Northern R. Co.

Edwin J. Bean, of St. Louis, Mo., and Harry Kirshbaum, of New York City, for Gerald Axelrod et al., owners and holders of Twenty Year Convertible Five-and-One Half Per Cent Bonds.

Luther M. Walter and Helen W. Munsert, both of Chicago, Ill., for Protective Committee for Holders of Common Stock.

Granville Whittlesey, Jr., of New York City, for Alleghany Corporation.

Russell L. Dearmont and Thomas T. Railey, both of St. Louis, Mo., for Guy A. Thompson, Trustee.

W. Lloyd Kitchel, of New York City, and Jacob Chasnoff, of St. Louis, Mo., for appellee Protective Committee for Holders of Missouri Pac. R. Co. First and Refunding Mortgage 5% Gold Bonds.

Leonard D. Adkins, of New York City, and S. Mayner Wallace, of St. Louis, Mo., for appellee Committee Representing Holders of First Mortgage Bonds and Income Bonds of New Orleans, Texas & Mexico Ry. Co., and Savings Banks Trust Co., representing Mutual Savings Banks in New York holding said Bonds.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

PER CURIAM.

A petition was filed on October 2, 1942, in reorganization proceedings of Missouri Pacific Railroad Company in which it was alleged that there was due the Reconstruction Finance Corporation a secured indebtedness of $23,134,800, together with accrual of interest at the rate of 6 per cent, amounting to some $10,000,000 additional, and that: "The Debtor has discussed with responsible officials of the Reconstruction Finance Corporation the payment of said loan in cash and an adjustment of the accrued interest, and upon information and belief alleges that if such loan is now paid in cash, the interest can and will be adjusted at a rate not to exceed four percent."

It was prayed that the Trustee be directed to make a compromise with the Reconstruction Finance Corporation within the terms suggested. A hearing was had after notice and the court found "that it would not at this time· be in the interest of the trust estate and of the creditors thereof to pay said indebtedness", and it accordingly denied the petition. These several appeals have been taken by the Debtor and other parties[1] to reverse the order. The Trustee has moved to dismiss the appeals on the ground, among others, that none of the appellants has an appealable interest.

 The effect of the order is to advise the Trustee not to attempt to negotiate a settlement ·of the indebtedness to the Reconstruction Finance Corporation which would require the Trustee to pay out of the funds in his hands some twenty eight million dollars, and it is obvious that the order does not directly adjudicate upon any claim of any creditor, secured or unsecured. Each creditor retains after the order the same claim it had before and the assets are unchanged. The Reconstruction Finance Corporation has acquiesced by not appealing. The most that can be claimed for appellants is that the proposed transaction, if undertaken, would bring in a profit or advantage to the estate as a whole.

[1] The parties taking these appeals are: Alleghany Corporation, a creditor and stockholder; the Debtor (unable to meet its obligations or to carry on); the Protective Committee for the Holders of Common Stock; the Protective Committee for Missouri Pacific General Mortgage Bondholders; the Protective Committee for the International-Great Northern First Mortgage Bonds; Axelrod, et al., holders of Unsecured Missouri Pacific 5½ percent convertible bonds.

But the position of the Trustee is that none of the several creditors, nor the Debtor or its stockholders, can represent or assume to litigate for that interest. The duty to fully represent that interest is upon the Trustee under the court's direction. Such general interest is his interest and not the interest of individual creditors or the Debtor or its stockholders. We think the position of the Trustee is sound. Chatfield v. O'Dwyer, 8 Cir., 101 F. 797; Jonas v. Bellerive Inv. Co., 8 Cir., 90 F.2d 688; Amick v. Mortgage Sec. Corp., 8 Cir., 30 F.2d 359; Foreman v. Burleigh, 1 Cir., 109 F.2d 313; In re Lewensohn, 2 Cir., 121 F. 538; In re Chakos, 7 Cir., 24 F.2d 482.

■ Nor can it help the appellants that the transaction which they have proposed for the alleged benefit of the whole estate is sought to be entered into with one of the creditors of the estate rather than with an outsider. To bring about some relinquishment of principal, interest, security or advantage on the part of each and every creditor in order to relieve the enterprise and allow it to be carried on is the very fundamental object and purpose of the reorganization proceedings. They assume such concessions voluntary as far as possible, but with some powers of coercion vested in the court. But they also assume proceedings consistent with and moving along with such willingness to make compromises rather than that any or every expression of such willingness shall occasion hindrance or delay to the consummation of their purpose. It appears that the railroad operations under war conditions have resulted in very large cash accumulations in the hands of the Trustee, and undoubtedly most all of the many thousands of those interested in the railroad would entertain some proposal to compromise their respective claims on some cash basis. But it is clear that reorganization proceedings break down entirely if every "discussion with responsible officials" of a creditor concerning such compromise proposals could be made the basis of appeals by individual creditors opposing reorganization, or by the Debtor. Undoubtedly all such compromise proposals would on their face indicate a saving to the estate inasmuch as none of the creditors expect to obtain full recovery of all they claim. Appellants stress that in the proposed compromise here involved, the creditor will reduce interest from six to four percent, so that a saving would appear in a sum around six million dollars.

■ But what scaling down of debts ought fairly and justly to be made is the real problem of the reorganization proceedings to be solved in a fair plan of reorganization. When a plan has been passed by the Commission and approved by the bankruptcy court, then the statute preserves the right of appeal to the debtor and creditors and all who may fairly be said to be affected. On such appeal taken by authorized parties the questions raised as to the treatment which the plan has accorded to particular creditors may properly be reviewed.

These views are in accord with those expressed on the same points by the Ninth Circuit in In re Western Pac. R. Co., 122 F.2d 807, 808. In that case a similar proposal to effect compromise of a debt of the railroad in reorganization under section 77 by paying it out of cash in the Trustee's hands or by refunding was submitted by petition to the bankruptcy court which refused to permit the Trustee to proceed with it. A creditor of the railroad undertook to appeal from the order but the Court of Appeals dismissed the appeal for lack of appealable interest. The Court said: "even a party may not appeal from a judgment or order unless he has some interest in the subject-matter thereof. * * * In this case appellant had no such interest and hence was not entitled to appeal."

In the reorganization proceedings of the same railroad an appeal was taken to the court from an order approving the plan of reorganization. On that appeal the court in one paragraph of the opinion inadvertently said (In re Western Pacific R. Co., 9 Cir., 124 F.2d 136, loc. cit. 138) that "neither the debtor nor the refunding mortgage trustee was adversely affected by the plan or by the order approving it. Hence neither of them was entitled to appeal." But this inadvertence was corrected on motion for rehearing (124 F.2d at page 140). The court heard the appeal from the order approving the plan and reversed the order for reasons not here considered.

■ Although the right to appeal from orders of the court in bankruptcy (or in reorganization proceedings) has been affected by the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c (General Orders in Bankruptcy 36, 11 U.S.C.A. following section 53), neither the rules nor the statute justify appeals by parties without appealable interest. The right may be ex-

pressly conferred or be apparent from the order sought to be reviewed. We find no such right or interest in any of the appellants here.

Appellants have stressed In re Braker, 6 Cir., 127 F.2d 652, as tending to contrary conclusion. That was an appeal from an order approving and confirming an order of distribution in a bankruptcy proceeding. The appeal was taken by the holder of a mechanics' lien upon real property owned by the bankrupt and mortgaged to a loan company. The appellant claimed that its lien was prior to that of the mortgagee because the mortgage had not been properly recorded under Ohio law, but the order of distribution awarded the mortgagee such considerable part of the proceeds of the sale of the property that the mechanics' lien was unsatisfied and the holder was denied the recovery he sought and claimed to be entitled to. Though we agree with the holding of the Sixth Circuit that he had a right to maintain an appeal from the order so directed against him, we do not consider the decision relevant here.

The appeals are dismissed.