**R. M. ALLEN, Trustee of the Estate of Marvin P. Lovorn, Bankrupt, Appellant,**

v.

**R. A. WATKINS, Appellee.**

No. 15896.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Rehearing Denied Aug. 23, 1956.

Forrest G. Cooper, Indianola, Miss., for appellant.

Oscar B. Townsend, Arthur B. Clark, Jr., Indianola, Miss., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This is an appeal by R. M. Allen, Trustee of the Estate of Marvin P. Lovorn, Bankrupt, from an order of the District Court reversing an order of the Referee in Bankruptcy which required the appellee, Watkins, to turn over to the Trustee the proceeds of a subsequent sale of mortgaged land of the Bankrupt, bought in by Watkins at the foreclosure sale. Appellant contends that the order of the Referee authorizing Watkins to proceed with the foreclosure sale was procured through fraud and that the Court should not permit a secured creditor, under such circumstances, to retain the proceeds of a subsequent private sale in excess of his own debt. The only question presented here is whether the representations of Watkins to the Referee to the effect that it was doubtful that there was any equity in the mortgaged lands of the bankrupt over and above the indebtedness, fraudulently induced the Referee to authorize the foreclosure sale.

The bankrupt purchased part of the land in question from Watkins in 1952 for $45,000. Adjoining acreage thereafter acquired enlarged the tract at the cost of $11,500, making the total purchase price $56,500 for the entire tract. There

was a first lien on this land securing $35,000 in favor of The Mutual Benefit Life Insurance Company. A second lien, represented by a deed of trust in favor of Watkins, secured a $2,000 note to Watkins due December 1, 1954. On November 30, 1954, Lovorn was adjudicated a bankrupt and on December 11th, Allen was appointed Trustee, qualifying on December 14th.

A foreclosure of Watkins' deed of trust was commenced December 7th and, while this was proceeding, Watkins filed a petition with the Referee on December 14th alleging that it was doubtful whether there was any equity in said lands of the bankrupt over and above the indebtednesses. Petitioner requested an order disclaiming for the Trustee any equity in the security or an order authorizing the foreclosure sale which was pending.[1] The Referee entered an order dated December 22nd treating the petition as one requesting authority to foreclose a lien and granting authority to Watkins to proceed with the foreclosure sale under his mortgage. The order stated that any proceeds from the sale above the indebtedness were to be paid to R. M. Allen, Trustee.[2]

The foreclosure was legally concluded on January 4, 1955 at a public sale attended by numerous prospective purchasers. Watkins made the only bid and became the purchaser for the amount of his indebtedness. On January 13th Watkins entered into a contract to sell the land thus purchased at and for the sum of $55,000, this being $18,000 more than the total of the first and second liens. The sale was consummated through Harrison, a real estate agent who had, for a period before the bankruptcy, been advertising the place for sale and trying to sell it for the bankrupt.

On April 12th the Trustee petitioned the Referee to require a turn-over by Watkins of the $18,000 in purchase money notes to be applied by him to payment of the claims of unsecured creditors. The petition alleged actual fraud on the part of Watkins in his petition for authority to foreclose, wherein he stated that there probably was no equity in the property above the indebtedness thereon. Upon the hearing of the Trustee's petition an opinion was rendered in which the Referee explicitly found that the charges of actual fraud on the part of Watkins were unfounded.[3] Notwithstanding this finding, the order of the Referee required the turn-over by Watkins of the purchase money notes to the Trustee, the opinion of the Referee being that, in equity and good conscience Watkins would not be allowed to retain this profit while the

1. The petition set forth, among other things, the following:

"Petitioner shows that it is doubtful whether there is any equity in said lands of the bankrupt above the indebtedness; * * * Petitioner elects to look to his security for the payment of his indebtedness and does not hereby make proof of his claim in bankruptcy, but reserves the right to do so.

"Wherefore, premises considered, petitioner prays that the Court enter an order disclaiming for the Trustee any equity in the security * * * or enter an order authorizing and permitting said foreclosure, which is pending, with the understanding and provision that upon said sale being made any excess funds paid for the said land * * * be paid to the Trustee in Bankruptcy * * *"

2. "The said secured creditor has filed his petition for an order of disclaimer on the part of the Trustee, but the Court having no report from the Trustee and no appraisal, has no facts on which to enter an order of disclaimer. The said petition is treated as a petition for authority to foreclose a lien and as such is allowed.

"It is therefore ordered that the said R. A. Watkins be permitted to proceed with foreclosure sale under his mortgage, subject to all outstanding taxes, liens and equities; and that any proceeds above the balance due on the first mortgage and the balance due on the said mortgage and taxes be paid to R. M. Allen, Trustee."

3. The following is the pertinent part of the Referee's opinion:

"I will say in the beginning, so far as any question of any actual fraud is concerned, there will be no finding of fraud here. Whatever might have happened, I think happened in the course of events, and certainly, so far as Mr. Watkins was concerned, he was out to protect his interests; there was no actual fraud."

unsecured creditors got nothing. The District Court reversed the order of the Referee, finding that there was no fraud on the part of Watkins in his representations to the Referee.[4]

 It is well established that, upon adjudication of bankruptcy, title to the land belonging to the bankrupt vests in the Trustee as of the date of the filing of the petition. Jurisdiction to determine the foreclosure procedure, that is, who shall sell the property, is then within the discretion of the bankruptcy court and it may adopt one of several courses in disposing of the property. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Allebach v. Thomas, 4 Cir., 1927, 16 F.2d 853. The Referee chose the method of foreclosure to be conducted outside of court by the mortgagee with the provision that any excess from the sale be turned over to the Trustee. No objection to this method of disposing of the property was ever made by the Trustee in Bankruptcy though he had the right to redeem before foreclosure by payment of the debt or to enjoin foreclosure if he considered an equity to exist which would not be preserved by the foreclosure sale. The Trustee cannot now set aside the sale unless it was procured by the fraudulent representations of Watkins.

We find nothing in the record indicating that the findings of the Referee and District Court as to the absence of fraud were clearly erroneous. The petition of Watkins was treated as one to permit a foreclosure outside of court, and as such, was allowed. Moreover, the Referee's decision was made in the exercise of his own sound judgment, as is made clear by his specifically rejecting the proposition in the petition that he enter an order for disclaimer since there had been no appraisal. These findings are, under the showing here, binding on this Court.[5] The order is, therefore,

Affirmed.

---

4. Its findings contain the following:
   " * * * But if any false information was made to the Referee, the Referee did not act on it for he ordered a fair, open, public legal sale of the land, which sale was made and at which everybody present had an opportunity to bid on the land if they desired and nobody bid on it except the man who owned the mortgage and he had a perfect right to bid the same as anyone else. It is unfortunate if the land did not bring as much as had been expected, but the Court can find no fraud in the manner of the purchase of this land by the mortgage holder.

5. Rule 52(a) Fed.Rules Civ.Proc., 28 U.S. C.A.; General Orders in Bankruptcy, No. 47, 11 U.S.C.A., following § 53; In re Di Palo, 2 Cir., 1955, 218 F.2d 816; Griffin v. Kelley, 5 Cir., 1955, 227 F.2d 258.